**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **MICHELLE MEHLE** § | |
| § | |
| Vs. § | CIVIL ACTION NO. 2:15-CV-_____ |
| § | |
| **TRINITY INDUSTRIES, INC. &** § | |
| **TRINITY HIGHWAY PRODUCTS, LLC** § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes Michelle Mehle, Plaintiff, and files this Original Complaint against Trinity Industries, Inc., and Trinity Highway Products, LLC and for causes of action would respectfully show as follows:

**PARTIES**

1. Plaintiff is an individual residing in Duluth, Minnesota.

2. Defendant Trinity Industries, Inc. is a corporation organized under the laws of the state of Delaware with its principal place of business in Dallas, Texas. Trinity Industries, Inc. may be served with process by serving its registered agent for service of process: CT Corp System, 1999 Bryan St., Suite 900, Dallas, Texas 75201.

3. Defendant Trinity Highway Products, LLC, is a limited liability company organized under the laws of the state of Delaware with its principal place of business in Dallas, Texas. Trinity Highway Products, LLC may be served with process by serving its registered agent for service of process: CT Corp. System, 1999 Bryan St., Suite 900, Dallas, Texas 75201.

**STATEMENT OF JURISDICTION AND VENUE**

4. Jurisdiction and venue are proper in this Court.

5. This court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) as there

is diversity of citizenship among the parties, in that each Defendant is now and was at the time the action was commenced diverse in citizenship from the Plaintiff.  Furthermore, the amount in controversy exceeds the sum of $75,000.00, exclusive of interests and costs.

6. Venue in this Court is proper under 28 U.S.C. §1391 (b)(1) & (c)(2) as Defendant Trinity Industries, Inc. is subject to this Court's personal jurisdiction by having substantial assets located within it and has previously availed itself to this Court's jurisdiction by intentionally bringing previous litigation within this district.  Lastly, this Court has personal jurisdiction over Defendants because they regularly conduct business in this district and they derive substantial income from this district.

## FACTUAL BACKGROUND

7. This case arises out of an accident in Minnesota that occurred during the night of August 23rd, 2014 on Interstate 35 North near mile marker 237.  Plaintiff was approaching the 237 exit when she collided with an extruder-type guardrail end terminal fitted on the blunt end of a line of guardrail.  This is sometimes referred to as an "impact head" or "end treatment."

8. At the time of the accident, the guardrail and impact head in question was defective and unreasonably dangerous. As a result of this condition, instead of performing as intended, the guardrail locked up within the impact head and proceeded to penetrate the vehicle through the driver's door. This penetration pierced the passenger compartment of the vehicle. The following picture is from the actual accident scene:



9. As a result of the incident, Plaintiff suffered severe damage including, but not limited to, a fractured pelvis and a severely sliced calf muscle from the guardrail actually contacting her body. Plaintiff has endured multiple surgeries resulting from her injuries.

10. The "impact head" system was designed, manufactured and marketed by Defendant Trinity Industries and/or Defendant Trinity Highway Products, LLC (collectively referred to herein as Defendant Trinity). As intended, the "impact head" is designed to extrude the guardrail through the head so that the guardrail flattens out into a ribbon, which allows the energy from the impact to be absorbed and prevent the guardrail from penetrating the vehicle upon impact. The following picture has been downloaded from Google Earth and is of the actual ET-Plus head prior to the crash involving Plaintiff:



11.     Due to design changes made by Defendant Trinity in the early 2000's and again in 2005, however, the "impact head" has on numerous occasions failed to perform as intended. As a result, instead of flattening out into a ribbon upon impact, the guardrail acts like a spear in penetrating the vehicle upon impact. This creates an unreasonable risk of serious injury to occupants of vehicles that impact the guardrail. Trinity is in the business of manufacturing and selling various highway safety and construction products for use across the United States and more specifically manufactures and sells the ET-Plus guardrail end terminal ("ET-Plus") under an exclusive licensing agreement from Texas A & M University.

12.     The original production of the ET-Plus, built to approved specifications, was overall very successful and not only did it work for an initial impact, it continued to work even when struck again in a separate incident and before maintenance crews were able to repair it.

13.     The ET-Plus, along with each and every other product used on the

National Highway System throughout the United States must undergo testing to determine and validate crashworthiness before the product may be placed on the National Highway System.

14. The Federal Highway Administration, a division of the United States Government under the U.S. Department of Transportation, along with other state and federal organizations are charged with establishing the crashworthiness criteria for products such as the ET-Plus.

15. Once a product is approved for use along the National Highway System or the roadways of any state, its design specifications cannot be altered; or if altered, the product must undergo additional testing and approval prior to its placement on the roadways of the National Highway System.

16. Beginning sometime between 2000 and 2005, a different or altered ET-Plus started appearing along the National Highway System and on the roads in Minnesota, in particular, a revised or altered "head" was manufactured with an exit gap of approximately 1.0 inches rather than approximately 1.5 inches as originally tested, approved, and manufactured.

17. Beginning in early 2005, yet another different or altered ET-Plus started appearing along the National Highway System and on the roads in Minnesota; in particular, a revised or altered 'head' was manufactured with a 4" feeder chute (as opposed to the prior approved 5" feeder chute) and a shorter overall height.

18. In addition to the above, due to the shortened height, the feeder rails are actually inserted into the head .75" rather than being welded flush to it as originally designed and approved, thus drastically reducing the overall space of the feeder chute.

19. Trinity twice petitioned the Federal Highway Administration ("FWHA") for modifications to other components of the overall ET-Plus system; once in September of 2005 and then again in August of 2007.

20. The above-described requests (September 2005 and August 2007) dealt with components sold with the ET-Plus and their configuration, and nowhere in these design changes does Trinity mention the reduced feeder chute size or any other changes to the ET-Plus head.

21. Based upon information and belief, Trinity never officially notified or petitioned the Federal Highway Administration or any branch or unit of any federal or state government for approval or consideration of the changes as described above.

22. The ET-Plus, as modified in 2005 and at issue in this case, does not allow the guardrail to feed properly through the chute due to the reduced internal area of the head itself causing the guardrail to "throat lock" in the head during impact.

23. Once "throat lock" occurs, as is the case in this action, the ET-Plus system violently stops or redirects the vehicle in a manner causing serious injury or death – often by impalement.

24. On October 20, 2014, in *Joshua Harman, on Behalf of The United States of America v. Trinity Industries, Inc.*, which was filed In the United States District Court for the Eastern District of Texas – Marshall Division, it was decided by a jury that Trinity Industries, Inc. and Trinity Highway Products, LLC violated the False Claims Act by knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim. During this trial, it was revealed for the first time that Trinity, in conjunction with Texas A & M, had conducted five crash tests around 2005 of a flared ET-Plus configuration which is

substantially similar to many of the installed configurations on the road today which all failed.

25. Trinity, at all times relevant hereto, knew of the dangerous conditions created by its unapproved, modified ET-Plus system, as literally hundreds of thousands of these unapproved, secretly modified, inherently dangerous ET-Plus systems have been in use across the country for several years preceding the incident at issue in this lawsuit.

26. As a result of the jury's verdict in the above false claims act case, Trinity was required by the FHWA to re-test the ET-Plus in an effort to determine its crashworthiness from the FHWA's perspective. Trinity conducted eight separate tests during late 2014 and early 2015. While the results of the tests are still pending and subject to interpretation, Plaintiff contends the eighth test conducted by Trinity is almost identical to the facts of her crash. Namely, the head locked up causing the car to spin around in the lane of traffic wherein the guardrail ends up piercing the driver side door causing injuries similar to those of Plaintiff.

### CAUSE OF ACTION – DEFENDANT TRINITY, NEGLIGENCE & PRODUCT LIABILITY

27. Defendant Trinity had a duty to exercise ordinary care in the design, testing, marketing and distribution of the impact head system to ensure that it was not unreasonably dangerous for its intended and foreseeable use on the highways of the United States. Defendant Trinity knew, or in the exercise of ordinary care should have known, that the impact head system as re-designed in early 2000 and again in 2005 was defective and unreasonably dangerous to members of the driving public, including Plaintiff. Defendant Trinity breached its duty of ordinary care by placing the impact head system into the stream of commerce in a defective and unreasonably dangerous condition. This negligence on the part of Defendant Trinity was a proximate cause and cause-in-fact of the injuries sustained by Plaintiff.

28. Defendant Trinity is the manufacturer of the guardrail and impact head system installed at the location in question. It was foreseeable to Defendant Trinity that accidents would occur involving impact between vehicles and guardrails placed along the highways of the United States. Defendant Trinity defectively designed, manufactured, assembled, marketed and/or distributed the guardrail and impact head system when it modified the product in the early 2000's and again in 2005 in a manner that prevents the impact head system from operating as intended. As such, Defendant Trinity is liable under the doctrine of strict product liability. To the extent necessary, Plaintiff invokes the doctrine of strict product liability as set forth in Restatement (Second) of Torts §402A and Restatement (Third) of Torts: Product Liability §1-§2. The defective nature of the guardrail and impact head system was a producing cause and cause-in-fact of the injuries sustained by Plaintiff when her vehicle impacted the guardrail on August 23, 2014.

## DAMAGES

29. As a result of the occurrence in question, Plaintiff has sustained severe injuries and damages. As a result of these injuries, Plaintiff is entitled to recover compensatory damages in an amount that exceeds the jurisdictional minimum of this court for each of the following elements:

   (a) past and future medical expenses;

   (b) the lost earnings and loss of earning capacity sustained in the past; and loss of earning capacity that, in reasonable probability, will be sustained in the future;

   (c) pain and suffering, past and future;

   (d) mental anguish sustained in the past; and mental anguish that, in reasonable probability, will be sustained in the future;

   (e) exemplary damages;

(f) pre-judgment and post-judgment interest at the highest rates allowed by law.

## DEMAND FOR JURY

30. Plaintiff hereby makes demand for her right to a trial by jury afforded by the United States Constitution and tenders the requisite fee to the clerk concurrent with the filing of this Original Complaint.

## PRAYER

WHEREFORE, Plaintiff requests that Defendants be cited to appear and answer and that on final trial Plaintiff have and recover:

a. Judgment against Defendants, jointly and severally, for compensatory damages, including exemplary damages, in an amount that exceeds the minimum jurisdictional limits of the Court more fully set forth above;

b. Prejudgment and post-judgment interest as provided by law;

c. Costs of suit; and

d. Such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted,
**THE CLARK FIRM**


/s/ Collen Clark
**COLLEN CLARK**
State Bar No. 04309100
2911 Turtle Creek, Suite 1400
Dallas, Texas 75219
Phone 214-780-0500
Fax 214-780-0501
E-mail: cclark@clarklawgroup.com

*LEAD COUNSEL FOR PLAINTIFF*

/s/ Omar G. Alvarez
**OMAR G. ALVAREZ**
State Bar No. 24045402
O.G. Alvarez & Associates, P.C.
Reunion Square - Tower II
10001 Reunion Place, Suite 600
San Antonio, Texas 78216
Telephone:  (210) 354-3900
Facsimile:   (800) 948-7571
E-mail:  ogalvarez@ogalvarezlaw.com

/s/ Josh B. Maness
Josh B. Maness
State Bar No. 24046340
P.O. Box 1785
Marshall, Texas 75671
Tel. (903) 407-8455
Fax. (877) 320-5751
E-mail:  manessjosh@hotmail.com

/s/ Kurt Truelove
Justin Kurt Truelove
TX State Bar No. 24013653
**TRUELOVE LAW FIRM, PLLC**
100 West Houston
Marshall, Texas 75670
903-938-8321
903-215-8510 Fax
kurt@truelovelawfirm.com